# SELLER AGREEMENT

This Seller Agreement (this "**Agreement**") is made and entered into on March 7, 2012 (the "**Effective Date**") by and between Imperial Auto Protection, LLC a Missouri a limited liability company ("**Seller**"), and Omnisure Group, LLC, a Delaware limited liability company ("**Omnisure**").

Seller sells service contracts or product warranties ("**Contracts**") as an agent for a third party provider or administrator (the "**Administrator**"), which Contracts provide for the payment or reimbursement of certain costs for the repair and replacement of certain parts of products acquired by purchasers of Contracts ("**Purchasers**"). Obligations of Administrator under the Contracts may be secured by an insurance policy (the "**Policy**") from an insurance company or other party ("**Insurer**"), which Policy insures the performance or payment by the obligor under a Contract should the obligor be unable to perform or pay.

Administrator desires to provide a payment plan program for Purchasers to pay the aggregate sales price of a Contract on an installment basis.

Omnisure administers, services and maintains an installment payment plan program (the "**Payment Plan Program**").

Seller desires to participate in the Payment Plan Program and Omnisure is, under certain circumstances, willing to permit Seller to participate in the Payment Plan Program and provide installment payment arrangements for Purchasers of Contracts for the benefit of Seller and Administrator under the terms and conditions set forth herein. Each Purchaser who participates in the Payment Plan Program shall enter in an agreement with Omnisure pursuant to which such Purchaser agrees to pay to Omnisure the sales price for the Contract less any down payment made by Purchaser with respect to the Contract (the "**Purchase Plan Agreement**").

NOW, THEREFORE, in consideration of the foregoing, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the parties hereto agree as follows:

A.     Accepted Contracts and Documentation. From time to time, Seller will tender Contracts to Omnisure for inclusion in the Payment Plan Program. Omnisure may, in its sole discretion and for any reason, refuse to accept any account or Contract or include any Contract in the Payment Plan Program, and Omnisure shall not be liable to Seller or any other party on account of any such refusal. For each of the Contracts that Omnisure accepts (each, an "**Accepted Contract**"), Seller shall deliver to Omnisure electronic copies of the originals of Purchaser's Payment Plan Agreement as well as any other documents required by Omnisure. Seller's delivery of documents and information shall be made in compliance with Omnisure's policies in effect from time to time. Seller shall maintain duplicate originals of all documents in connection with each Accepted Contract and shall immediately deliver such duplicate originals to Omnisure upon Omnisure's request. Seller shall maintain executed copies of all documents in connection with each Accepted Contract; provided, however, that Seller may accept authorizations from Purchaser by telephone if, an only if, Seller records all such telephone authorizations and maintains such recordings for a period of at least 48 months. Upon Omnisure's request, Seller shall immediately deliver to Omnisure duplicate copies of such recordings.

B.     Down Payment. Unless otherwise agreed by Omnisure in writing, Seller shall require all Purchaser's to make and Seller shall collect a down payment with respect to each Accepted Contract equal to not less than 5% of the sales price of the Contract (the "**Down Payment**").

C.     Omnisure Fee. Omnisure shall receive the applicable fee for each Accepted Contract included within the Payment Plan Program, as determined by Omnisure from time to time (the "**Discount Amount**").

D.     Advances to Seller.

1.     *Advances to Seller.* Following Omnisure's receipt and acceptance of an executed copy of the required documents with respect to an Accepted Contract, the account associated with such Accepted Contract, Purchaser's payment of the Down Payment, and Purchaser's payment of the first installment pursuant to the Payment Plan Program, Omnisure shall advance to Seller an amount equal to (i) the Advance Rate (as defined

below) multiplied by the Seller Profit (as defined below), less (ii) the amount of the Down Payment, and less (iii) the Discount Amount (the "**Advanced Amount**"). For purposes of this Agreement: (a) "**Advance Rate**" shall mean the percentage set forth on the Schedule; (b) "**Seller Profit**" shall mean the amount of the sales price of the Contract that Seller is entitled to receive; (c) "**Seller Cost**" shall mean the amount of the sale price of the Contract that Administrator is entitled to receive; and (d) "**Administrator Refund Portion**" shall mean the Refund Amount less the amount of the Seller Profit. Omnisure, in its sole discretion, shall be entitled to modify the Advance Rate from time to time for any reason without prior notice to Seller. Omnisure shall be entitled to offset any and all amounts due from Seller to Omnisure under this Agreement or otherwise ("**Seller Obligations**") from any and all amounts which would otherwise be advanced by Omnisure to Seller.

        2.    *Excess Payments.* Omnisure shall have no obligation to pay Seller any amounts in excess of the Advanced Amount until Omnisure has determined, in its sole discretion, that Seller has fully, finally and irrevocably satisfied all direct and contingent obligations to Omnisure hereunder or otherwise. Seller acknowledges that the amount due to Seller, if any, cannot be calculated until such time as all Seller Obligations have been fully and finally satisfied.

E.    Refunds.

        1.    *Involuntary Cancellation.* If a Purchaser fails to make any payment under the Payment Plan Agreement when due, Omnisure shall send a late notice to the Purchaser. If Omnisure fails to receive payment, including any applicable late charges, from the Purchaser within the 10-day period (or later as required by applicable law) following the mailing of the late notice, Omnisure shall have the right to cancel such Contract and send a cancellation notice to Purchaser, Seller and Administrator. In the event of any other event of default under the Payment Plan Agreement, Omnisure shall have the right to cancel the Contract and send a cancellation notice to Purchaser, Seller and Administrator. The Contract shall be deemed cancelled effective on the date set forth in the cancellation notice and Seller shall pay to Omnisure the Refund Amount in accordance with Section E(3) below.

        2.    *Purchaser Cancellation.* Each Purchaser shall have the right, under the relevant Contract and Payment Plan Agreement, to cancel any Account and the related Contract and Payment Plan Agreement at any time without further obligation to Administrator, Seller or Omnisure. If Seller receives notice from Purchaser that Purchaser intends to cancel its Contract, then Seller must (1) immediately notify Omnisure and Administrator of the Purchaser's cancellation and (2) pay to Omnisure the Refund Amount in accordance with Section E(3) below.

        3.    *Refund Amount.* If Omnisure or a Purchaser requests to cancel any Accepted Contract or an Accepted Contract is otherwise cancelled for any reason, Seller shall refund to Omnisure the following amount (each, a "**Refund Amount**"):

                (i)    *Cancellation Before First Installment Paid.* If the Contract is cancelled before the first installment payment to Omnisure, the Refund Amount shall equal the sum of the Seller Cost and the Seller Profit for that Contract.

                (ii)    *Cancellation After First Installment Paid.* If a Contract is cancelled after the first installment payment to Omnisure, the Refund Amount shall equal the product of the following: (x) the sum of the Seller Profit and Seller Cost for that cancelled Contract, multiplied by (y) a fraction, the numerator of which shall be the number of days comprising the term of the canceled Contract less the number of days that such Contract was in force prior to the effective date of cancellation and the denominator of which shall be the number of days comprising the term of the canceled Contract. Each Refund Amount shall be calculated as set forth above regardless of the manner in which the Sales Price is earned pursuant to the relevant Contract.

Omnisure shall retain the following amounts from the Refund Amount: (a) the sales price of the Contract; plus (b) any late payment charges, NSF charges, chargeback amounts and related chargeback fees, and any other bank-related fees and/or penalties due to Omnisure; less (c) any payments received by Omnisure from Purchaser on account of such Contract; less (d) the amount of the Down Payment (the "**Retention Amount**").

4. *Payment of Refund Amount.* Seller shall promptly pay to Omnisure the Refund Amount with respect to any cancelled Service Contract less the Administrator Refund Portion with respect to such Contract; provided, however, that if Omnisure does not receive the full amount of the Administrator Refund Portion with respect to such Contract within 60 days following that date of cancellation of such Contract, Seller shall promptly pay to Omnisure the unpaid portion of the Administrator Refund Portion with respect to such Contract.

5. *Seller Credit.* If the Refund Amount is greater than the Retention Amount with respect to any Contract, then Omnisure shall credit Seller with the excess of the Refund Amount over the Retention Amount. Seller shall be responsible for all payments and refunds to Purchaser with respect to such Service Contract.

6. *Payments from Administrator.* If Omnisure has not received the full amount of any Refund Amount, other refund or any other amount due from Seller hereunder within 60 days following the date of cancellation of any Accepted Contract or the date such payment is otherwise due, or if the Refund Amount is less than the Retention Amount, Seller hereby authorizes the applicable Administrator, upon notice from Omnisure and with no further action required by any other party, to remit such amounts directly to Omnisure out of any funds due from Administrator to Seller (and Seller hereby releases such Administrator from and against any and all liabilities or damages which might arise out of any such payment directly to Omnisure).

7. *Intentionally left blank*

8. *Sales Price Reductions.* In the event that the sales price with respect to any Accepted Contract is reduced after the Advanced Amount with respect to such Accepted Contract has been advanced by Omnisure to Seller, Seller shall immediately pay to Omnisure the full amount of such reduction.

F. <u>Covenants of Seller</u>. During the term of this Agreement, Seller shall:

1. follow all Payment Plan Program policies and procedures with respect to all Accepted Contracts included in the Payment Plan Program;

2. ensure that Purchasers (1) are not offered different pricing on Accepted Contracts based on their decision to pay a lump sum for the Accepted Contract versus participating in the Payment Plan Program, and (2) are not charged any interest or finance fees, or any other amounts that could be deemed to be interest or finance fee charges;

3. upon execution of an Accepted Contract, collect the Down Payment from the applicable Purchaser and report to Omnisure the precise amount of the Down Payment actually collected by Seller;

4. maintain adequate reserves to pay any and all Refunds, any potential Purchaser refunds and any other amounts which may become due and owing hereunder from time to time;

5. in the event an Accepted Contract is cancelled for any reason, after payment of the Refund to Omnisure, promptly refund to the applicable Purchaser the full amount due and owing to such Purchaser (Seller being solely and fully responsible for the payment of such refund) and, to the extent Seller receives any refunds from the applicable Administrator, immediately remit such amount to the applicable Purchaser;

6. ensure that each Accepted Contract is genuine, evidences an undisputed bona fide transaction, is not subject to any right of set-off or counterclaim, has a coverage term of at least 36 months and relates only to products included in the Payment Plan Program;

7. upon request of Omnisure, provide financial, entity and equity holder information with respect to Seller and its affiliates;

8. cause all parties involved in the Payment Plan Program to comply with the Federal Electronic Funds Transfer Act, Federal Reserve Regulation E and any similar local or state laws (collectively, the "**EFT Laws**") with respect to the transfer of funds between Purchaser and Administrator, Seller or Omnisure by pre-

authorized draft or direct debit, which includes (a) with respect to any pre-authorized draft or direct debit, causing Purchaser to authorize such pre-authorized draft or direct debit in accordance with EFT Laws, and (b) upon Omnisure's request, promptly providing copies to Omnisure of all records evidencing such authorizations (it being understood that if this subsection constitutes a delegation of duties required by any EFT Law by Omnisure to Seller, Seller hereby accepts such delegation and agrees to be fully responsible for the performance of all such duties, as if it were primarily responsible under the EFT Laws);

9. maintain executed originals with respect to all documents in connection with the Payment Plan Program and each Accepted Contract; provided, however, that Seller may accept Purchaser authorizations by telephone if, and only if, Seller records all such telephone authorizations and maintains such recordings for a period of at least 48 months and, upon Omnisure's request, provides Omnisure duplicate copies of such recordings;

10. comply with all best practices policies with respect to Seller's industry or the products covered by the Contracts;

11. ensure that no Accepted Contract is subject to any prior assignment by Seller, claim, lien or security interest against Seller (and Seller will not make any assignment thereof or create any security interest therein, nor permit the same to become subject to any attachment, levy, garnishment, or other judicial process);

12. promptly notify Omnisure in writing in the event Seller is or becomes subject to an inquiry or investigation by any local, state or federal government or regulatory agency, or any consumer or professional association and provide to Omnisure, upon Omnisure's request, copies of all documents in connection with any such inquiry or investigation;

13. provide advance, written disclosure to Omnisure of Seller's intent to use any third party dialing services;

14. comply with all applicable statutes, laws, orders, regulations and decrees;

15. promptly comply with and/or resolve all complaints, requests for information, or other documents filed with or by any local, state or Federal government or regulatory agency, or any consumer or professional association, a Purchaser or any other third party (collectively, "**Third Party Complaints**");

16. not use any form or agreement in connection with Accepted Contracts offered pursuant to the Payment Plan Program that has not been supplied or approved by Omnisure in writing;

17. not solicit offers from financing companies or lending institutions to finance or obtain financing with respect to any Contract which has been offered to Omnisure, until such time as Omnisure has provided Seller with written notice of Omnisure's refusal to accept such Contract;

18. not sell, either directly or through an affiliated entity, a Contract to any Purchaser within 180 days of the cancellation of such Purchaser's Accepted Contract (except to the extent such new contract becomes part of the Payment Plan Program);

19. not grant or allow any lien, security interest, mortgage or encumbrance of any kind upon any portion of the Collateral (as defined below) or otherwise transfer, sell, assign, convey, pledge or permit to be granted any interest of any kind whatsoever in any Accepted Contract;

20. not issue, incur, assume, create or otherwise have outstanding any indebtedness for borrowed money (including, without limitation, any financing arrangements for Accepted Contracts) without the prior written consent of Omnisure;

21. not declare or pay any dividend or distribution to any equity holder of Seller, or repurchase any equity owned by any equity holder of Seller following any Event of Default (as defined below) or such that Seller cannot pay to Omnisure all Refunds;

22. not enter into any written or oral agreement with any Purchaser for any discount or deduction with respect to any Accepted Contract with Omnisure's prior written consent and payment to Omnisure by Seller of an amount equal to the discount or deduction;

23. not engage, either directly or indirectly, in any "voice blasting" or "robo-calling";

24. not engage, directly or indirectly, in any form of telemarketing which violates the Telephone Consumer Protection Act of 1991, the Telemarketing Consumer Fraud and Abuse Prevention Act, any Federal Trade Commission rule, order or regulation, any state telemarketing or consumer fraud statute, or any other applicable Federal, state or local law or regulation; or

25. following the occurrence of an Event of Default, not take any action intended to hinder or prevent any payment of any amounts due to Omnisure, including, without limitation, the cancellation of Accepted Contracts.

G. Term.

1. *Termination.* This Agreement shall commence as of the Effective Date and continue until terminated by either party for any reason upon written notice to the other party.

2. *Post-Termination.* Following termination of this Agreement, Seller shall remain obligated to comply with all of the requirements set forth herein in respect of each Accepted Contract including, without limitation, Sections D and E above. This Section shall survive the expiration or termination of this Agreement for any reason.

H. Events of Default. The occurrence of any one or more of the following events shall constitute an event of default hereunder (each, an "**Event of Default**"): (i) Seller fails to pay any amount due to Omnisure within 5 days of the date when due; (ii) any representation or warranty set forth herein shall be untrue when made; (iii) Seller defaults under any other agreement or contract with Omnisure and/or Administrator to which it is a party; (iv) Seller becomes insolvent, makes an assignment for the benefit of creditors or otherwise is unable to timely satisfy its debts and/or obligations as they become due; (v) proceedings in bankruptcy or for reorganization of Seller or for the readjustment of any of its debts under any bankruptcy law or under any other act or law for the relief of debtors, shall either be commenced involuntarily against or filed by Seller; (vi) proceedings seeking appointment of a receiver, trustee, custodian, conservator or similar official for Seller or for all or any substantial part of its assets, under any existing or future law of any jurisdiction, shall either be commenced involuntarily against or filed by Seller; (vii) Seller breaches any other provision, covenant or obligation set forth in this Agreement; or (viii) the occurrence of any adverse change in Seller's business, Seller's financial situation, Seller's net worth, Seller's risk profile or Seller's prospects, as determined by Omnisure in its sole discretion. Seller hereby agrees and acknowledges that it is fully responsible for all actions taken by parties engaged by or on behalf of Seller in connection with Contracts, and as such, any action taken by any such party in violation of this Agreement shall constitute a breach of this Agreement by Seller.

I. Certain Remedies.

1. *Events of Default.* Following the occurrence of an Event of Default, in addition to any other remedies Omnisure may have at law, equity and/or under this Agreement, (i) Omnisure may continue to determine the Advance Rate in its sole discretion, recoup or offset against any and all amounts which may otherwise be advanced by Omnisure to Seller any and all Seller Obligations, and refuse to accept any Contracts in the Payment Plan Program, (ii) hold all other amounts that are held by Omnisure for Seller or may become due to Seller from Omnisure until all Contracts are paid in full and/or cancelled, all associated accounts receivable have been paid in full, all Purchasers have received any refunds due and owing to them, and Omnisure has received all Refunds and other amounts due and owing to Omnisure under this Agreement or any other agreement between Omnisure and the Seller, and (iii) Omnisure shall be entitled to receive, directly from Administrator, any and all payments due from Administrator to Seller with respect to all Accepted Contracts sold by Seller that are administered by Administrator.

2. *Affiliated Companies.* Seller hereby acknowledges that from time to time Seller or an entity controlled by, controlling or under common control with Seller or otherwise affiliated with Seller ("**Affiliates**") may

be entitled to receive funds from Administrator with respect to reinsurance earned premiums or retro earned premiums or otherwise (the "**Affiliate Amounts**"). Seller shall notify Omnisure in writing of any Affiliates. In the event that any amounts are due from Seller to Omnisure or upon the occurrence of an Event of Default, Omnisure shall have the right, which right shall be senior to any rights of Seller or any other third party, to directly receive any such Affiliate Amounts in order to set off against any Seller Obligations. Seller hereby acknowledges and agrees that Omnisure may instruct Administrator to pay such Affiliate Amounts to Omnisure, and Seller hereby directs Administrator to pay such Affiliate Amounts directly to Omnisure upon receipt of such instruction from Omnisure with respect to the Affiliate Amounts.

3. *Past Due Amounts; Remedies.* Upon the occurrence of an Event of Default, all amounts due and owing to Omnisure under this Agreement shall accrue interest daily at the rate of 1.5% per month or the highest allowable state maximum rate. Notwithstanding anything to the contrary contained in this Section, all of the remedies set forth above in this Section H and elsewhere in this Agreement are cumulative and do not exclude Omnisure's exercising any other rights or remedies provided at law or in equity. Seller shall be responsible for all costs incurred by Omnisure, including attorneys' fees, in collecting any such past due amounts from Seller.

4. *Non-Circumvention.* The parties hereby acknowledge that any action taken, or omitted to be taken, by any of Seller's equity holders or officers which would, had such action instead been taken by Seller, constitute a breach of this Agreement or Event of Default, shall be deemed to constitute an Event of Default hereunder.

J. Seller Representations and Warranties. Seller hereby represents and warrants to Omnisure that: (i) this Agreement has been validly executed and delivered by Seller and constitutes a valid and binding obligation of Seller; (ii) Seller is duly organized in its state of formation and is in good standing under the laws of its state of formation and all other states where it is required to be in good standing; (iii) there are, as of the date hereof, no liens or security interests on any portion of the Collateral; (iv) all financial statements, accounts receivable summaries, capitalization tables and other materials and information provided to Omnisure prior to the date hereof are true and correct in all material respects and do not fail to state any material facts regarding Seller; (v) Seller maintains internal procedures and controls to comply with all applicable laws and to promptly resolve all Third Party Complaints; (vi) Seller is in compliance with all applicable laws; (vii) Seller has all necessary licenses, approvals and other authority to carry out its business in accordance with all applicable laws, policies and regulations; (viii) Seller has not, at any time within the past 5 years, received any notice from the Federal Trade Commission, any attorney general, any state's attorney or any other governmental authority or other oversight authority alleging that Seller is not or was not in compliance with applicable rules, laws, ethical standards or policies; (ix) Seller is not insolvent; (x) the execution of this Agreement by Seller and the performance of Seller's obligations hereunder will not (a) result in a breach of any contract to which Seller is a party or by which its assets are bound, (b) result in the creation or imposition of any liens in favor of any third person or entity upon any of Seller's assets, or (c) render Seller insolvent; (xi) Seller is not a party to any litigation or arbitration proceeding as of the date of this Agreement, and no such action has, to the knowledge of Seller, been threatened against Seller; (xii) Seller has notified Omnisure in writing of all "doing-business-as" names it currently uses or has used at any time during the past 5 years; and (xiii) Seller does not engage in "voice-blasting" or "robo-dialing" practices.

K. Security Interest; Guaranty. To secure Seller's payment and performance of all of the Seller Obligations, Seller has granted to Omnisure a first priority security interest in all of Seller's assets pursuant to that certain Security Agreement by Seller in favor of Omnisure. The payment and performance of the Seller Obligations is also guaranteed by the guaranty of Sherry Nelson ("Guarantor") pursuant to that certain Guaranty by Guarantor in favor of Omnisure.

L. Indemnity. Seller hereby agrees to defend, indemnify and hold Omnisure and its members, managers, officers, employees and agents harmless from and against any and all claims, actions, demands, losses, damages, costs, liabilities, claims or other charges, absolute or contingent, matured or unmatured, known or unknown and any and all expenses incurred (including, but not limited to, attorneys' fees and court costs) by such party in connection with or arising out of (i) Seller's breach of this Agreement or breach or alleged breach of any Accepted Contract, (ii) any act or omission of Seller in connection with any Accepted Contract or any other aspect of Seller's business, (iii) any claim by Purchaser with respect to any Contract or the Payment Plan Program, (iv) any action, suit or proceeding by a third party relating to the subject matter of this Agreement, or (v) any cancellation of any Accepted Contract by a Purchaser, Seller, Administrator or Omnisure.

M.     <u>Governing Law; Interpretation</u>. This Agreement shall be construed in conformity with the laws of the State of Illinois without regard to choice of law or conflict of law rules. The parties hereto irrevocably agree that all actions or proceedings in any way, manner or respect, arising out of or from or related to this Agreement, shall be brought only in courts having situs within Cook County, Illinois. Each party hereby consents and submits to the jurisdiction of any local, state or federal court located within Cook County, Illinois and waives any right it may have to transfer the venue of any such action or proceeding. It is the intent of the parties that this Agreement be deemed to have been prepared by all of the parties and that no party shall be entitled to the benefit of any favorable interpretation or construction of any term or provision hereof under any rule or law.

N.     <u>Protection of Confidential Information; Authorization</u>. Each party recognizes that the other party has and will continue to develop certain trade secrets, know-how, records, manuals, correspondence, documents, financial and sales information, reports, customer lists, policies, procedures, proposals, marketing plans, ideas, concepts, services and any other proprietary information which is confidential (collectively "**Confidential Information**"). Each party agrees that, upon the termination of this Agreement, such party will immediately deliver to the other all papers, books, manuals, lists, correspondence, documents and materials relating to the other party's Confidential Information, together with all copies and embodiments of all of the foregoing including, without limitation, electronically stored records, databases, programs, computer disks and computer software. Each party further agrees that such party will not at any time reveal any Confidential Information of the other party to any other person or otherwise use the Confidential Information of the other party for any purpose other than as specifically set forth herein. It is understood that Confidential Information does not include any information that is publicly available through no fault of the receiving party. Notwithstanding anything set forth above, Omnisure shall be entitled to (i) provide customer payment information, funding information regarding Seller and other related information to any software vendor and/or licensor from which Seller licenses or otherwise has use of software related to the administration of the Accepted Contracts and/or Purchasers, (ii) provide information regarding Seller to any Administrator as deemed necessary by Omnisure (including information regarding Events of Default), and (iii) report Events of Default and other Seller infractions hereunder to any governmental authority or oversight body.

O.     <u>Severability</u>. Whenever possible, each provision hereof shall be interpreted in such manner as to be effective and valid under applicable law; but if any provision hereof or the application thereof to any party or circumstance is prohibited by or invalid under applicable law, such provision shall be effective only to the minimal extent of such prohibition or invalidity, without invalidating the remainder of such provisions or the remaining provisions hereof or the application of such provisions to other parties or circumstances.

P.     <u>Disclaimer; Consequential Damages</u>. Except as explicitly set forth in this Agreement, Omnisure does not make any warranties of any kind, either expressed or implied, including, without limitation, (a) warranties of merchantability or fitness for a particular purpose, (b) that its services hereunder will meet Seller's requirements, (c) that Omnisure will include any Contract in the Payment Plan Program, or (d) as to the results that Seller may achieve on account of the relationship created hereby. **In no event shall Omnisure have any liability to Seller for any loss of data, lost profits, costs of procurement of substitute goods or services, or any other special, indirect, punitive, incidental, exemplary or consequential damages (whether direct or indirect), whether based in contract, tort (including negligence) or any other theory of liability, even if Omnisure has been advised of the possibility of such damages. In addition, Seller hereby agrees and acknowledges that Omnisure is not liable to Seller in any way or in any amount on account of any damages and/or losses suffered by Seller, or alleged to be suffered by Seller, on account of any action taken prior to the date hereof by Omnisure, and Omnisure shall have no liability to Seller on account of any decisions regarding the Advance Rate, offsets or inclusion of a Contract within the Payment Plan Program.**

Q.     <u>Certain Acknowledgments</u>. Seller hereby agrees and acknowledges that: (1) the Seller Profit is earned by the Seller from the Administrator rather than Omnisure, as Seller is not providing any services to, for or on behalf of Omnisure; (2) Omnisure's advance of a portion of the Seller Profit is an accommodation to the Administrator; (3) all amounts due and owing by a Purchaser under any Accepted Contract (other than the Down Payment, to which Seller has rights only on account of the assignment of such rights by the Administrator) are and will be payable solely to Omnisure (and to the extent any such payments are deemed to be payable to Seller for any reason, Seller hereby assigns all rights to such payments to Omnisure).

R.     <u>Non-Solicitation</u>. Seller hereby agrees that during the term of this Agreement and for a period of 2 years thereafter, it will not solicit or hire any employees or contractors of Omnisure, as well as any former employees or contractors who were employed or engaged by Omnisure at any time during the term of this Agreement.

S. <u>Successors</u>. This Agreement and all of the terms and provisions hereof shall be binding upon and shall inure to the benefit of the parties, their respective legal representatives, heirs, successors or assigns.

T. <u>Entire Agreement</u>. This Agreement contains the entire understanding among the parties and supersedes any prior understandings and/or written or oral agreements among them respecting the within subject matter. There are no representations, agreements, arrangements, or understandings, oral or written, between or among the parties hereto relating to the subject matter hereof that are not fully expressed herein.

U. <u>Fees and Costs; Taxes</u>. Omnisure shall be entitled to recover from Seller all costs and expenses, including, without limitation, reasonable attorneys' and paralegals' fees, incurred by Omnisure in connection with Omnisure's enforcing any of Omnisure's rights or remedies under this Agreement. Seller shall be responsible for the payment of all taxes due and owing in connection with the relationship created by this Agreement (other than Omnisure's income taxes).

V. <u>Notices</u>. Any notices, offers, acceptances and other communications required hereunder shall be in writing and deemed to have been given and received (i) when personally delivered or upon transmission of a facsimile (with confirmation of transmission), (ii) one day after being sent by a nationally recognized overnight courier with guaranteed next day delivery, or (iii) three days after being mailed by United States certified mail, return receipt requested, postage prepaid, to the parties at their respective addresses as set forth below or at such other address as such party may designate by notice hereunder.

W. <u>Assignment</u>. No party may assign its rights or delegate any duties under this Agreement without the express prior written consent of the other parties; <u>provided</u>, <u>however</u>, that Omnisure and its permitted assignees may pledge some or all of its rights hereunder and any documents, instruments or agreements arising therefrom or related thereto, including assigning such rights, documents, instruments and agreements to any third party that provides financing to Omnisure.

X. <u>Pronouns and Headings</u>. As used herein, all pronouns shall include the masculine, feminine, neuter, singular and plural thereof wherever the context and facts require such construction. The headings, titles, and subtitles herein are inserted for convenience of reference only and are to be ignored in any construction of the provisions hereof.

Y. <u>Survival of Rights</u>. Except as otherwise specifically provided to the contrary in this Agreement, no termination (regardless of cause or procedure) of this Agreement shall in any way affect or impair the power, obligation, duties, rights and liabilities of Seller or Omnisure relating to (i) any transaction or event occurring prior to such termination, (ii) any Contract existing as of the date of termination of this Agreement, or (iii) any of the undertakings, agreements, covenants, warranties and representations of Seller or Omnisure with respect to (i) and (ii) above. All such undertakings, agreements, covenants, warranties and representations shall survive such termination or cancellation.

Z. <u>Rights of Creditors and Third Parties under this Agreement</u>. This Agreement is entered into between Seller and Omnisure for the exclusive benefit of Seller and Omnisure and their respective successors and permitted assigns and is expressly not intended for the benefit of any other party. Except for lenders of Omnisure which have been granted a security interest in certain accounts, and only to the extent provided by applicable law, no other creditor or third party shall have any rights under this Agreement.

AA. <u>Counterparts</u>. This Agreement may be executed in counterparts, each of which shall be deemed an original and all of which, when taken together, shall be deemed to be one Agreement. Signatures transmitted by facsimile shall be considered authentic and binding. In addition, signatures e-mailed in a "Portable Document Format" version of this Agreement or within a "Tagged Image File Format" version of this Agreement shall be considered authentic and binding.

BB. <u>Further Assurances</u>. Each party agrees to do all acts and things and to make, execute and deliver such written instruments, as may from time to time be reasonably required to carry out the terms and provisions of this Agreement.

CC. <u>Title to Accepted Contracts</u>. Seller hereby acknowledges and agrees that title to Accepted Contracts (including all agreements relating thereto and all amounts owing by a Purchaser thereunder) shall at all times be vested in Omnisure and its assignees, and neither Administrator nor the Seller shall have any right, title or interest therein.

DD. Applicability. This Agreement shall apply to all Accepted Contracts and all other Contracts financed by Omnisure prior to or following the execution hereof.

*(Signature Page to Follow)*

IN WITNESS WHEREOF, the parties have executed and delivered this Agreement as of the day and year first set forth above.

**IMPERIAL AUTO PROTECTION, LLC**

Signature: _Sherry Nelson_
Print Name: _Sherry Nelson_
Title: _Member_
Address: _4652 Briargate_
City, State, Zip: _St. Charles, MO 63304_
Phone: _636-634-0341_
Fax: _636-441-6810_

**OMNISURE GROUP, LLC**

Signature: _[signature]_
Print Name: _Paul Walder_
Title: _manager_
Address: _440 N Wells Suite 410_
City, State, Zip: _Chicago, IL 60654_
Phone: _312-836-0400_
Fax: _312-822-9301_

# SCHEDULE

**Discount Amount:**

| Number of payments | 24-19 | 18-16 | 15-12 | 12-6 |
|---|---|---|---|---|
| Discount fee | 16% | 13% | 10% | 9% |
| Minimum Fee | 250 | 200 | 190 | 180 |

**Cancellation Pricing:**

| PAYMENTS MADE | Cancellation Fee Per Contract |
|---|---|
| 0 | $10 |
| 1 | 25% |
| 2 | 50% |
| 3 | 60% |
| 4 | 75% |
| 5 | 100% |

**Advance Rate:** 24 installments 60%
18 installments 65%
< or =15 installments 70%

800458/4/2819.000

11